[Cite as *State v. Risner*, 2021-Ohio-342.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
WYANDOT COUNTY

STATE OF OHIO,

                                                      CASE NO. 16-20-05

    PLAINTIFF-APPELLEE,

v.

PATRICIA R. RISNER,                        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Wyandot County Common Pleas Court
Trial Court No. 19-CR-0083

Judgment Affirmed

Date of Decision:  February 8, 2021

APPEARANCES:

    *Edwin M. Bibler* **for Appellant**

    *Eric J. Figlewicz* **for Appellee**

**WILLAMOWKSI, P.J.**

{¶1} Defendant-appellant Patricia R. Risner ("Risner") appeals the judgment of the Wyandot County Court of Common Pleas, alleging (1) that the trial court erred by denying her motion to withdraw her guilty plea; (2) that she was denied her right to the effective assistance of counsel; and (3) that the trial court erred by sentencing her to serve a term in prison. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On July 24, 2019, Risner was indicted on one count of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree; one count of complicity to burglary in violation of R.C. 2923.03(A)(2), a felony of the third degree; one count of misuse of credit cards in violation of R.C. 2913.21(B)(2), a misdemeanor of the first degree; and one count of complicity to misuse of credit cards in violation of R.C. 2923.03(A)(2), a misdemeanor of the first degree. Doc. 1. Risner entered her sister's home without permission and participated in the theft of money and a bank card. Change of Plea Tr. 11; Sentencing Hearing Tr. 8. Julie A. Wolf ("Wolf") and Larae M. Brand ("Brand") were allegedly involved with Risner in the commission of these offenses. Doc. 10. On July 29, 2019, Risner pled not guilty to the charges against her. Doc. 7.

{¶3} However, on January 29, 2020, Risner pled guilty to one count of complicity to burglary in violation of R.C. 2911.12(A)(3), R.C. 2923.03(A)(2).

Doc. 28, 30. The remaining three counts against her were subsequently dismissed. Doc. 28. During the Crim.R. 11 colloquy preceding the entry of her plea of guilty, Risner informed the trial court that she was on a medication but that it did not interfere with her ability to think clearly. Change of Plea Tr. 4. The trial court then found her competent to proceed. *Id*. After the Crim.R. 11 colloquy, the trial court accepted Risner's plea of guilty. Doc. 30.

{¶4} Risner's sentencing hearing was scheduled for May 20, 2020. Doc. 45. However, on May 19, 2020, Risner filed a motion to withdraw her guilty plea. Doc. 35. In this motion, Risner alleged that she "only pled guilty out of fear and panic." Doc. 35. She further alleged that she was innocent and that she "ha[d] recently discovered new evidence to help prove her innocence." Doc. 35. This evidence was a letter ("the letter") that Risner alleged to be from Wolf. Motion Hearing Tr. 6. Risner stated that she had obtained this letter from Wolf's mother. *Id*.

{¶5} On May 20, 2020, the trial court held a hearing on this motion. Motion Hearing Tr. 1. Risner testified at the hearing about the contents of the letter, but defense counsel indicated that he had "just got [the letter] before we walked into the courtroom." Motion Hearing Tr. 17. The trial court then directed the parties to quote the relevant portions of the letter in their written, closing arguments on this motion. *Id*. The trial court then summarized Risner's testimony at the motion hearing as follows:

> **[S]he testified that she received a letter from Jessica Wolf and that Jessica Wolf stated she was bribed by Larae Brand to say that [Risner] was present for the crime. [Risner] further testified that she did not know where Jessica Wolf was at this time. [Risner] testified that she had no actual knowledge of bribery, and further admitted to telling law enforcement she entered the victim's house.**

Doc. 35. The State subsequently filed a judgment entry that indicated Wolf had failed to appear at a hearing in the criminal proceeding against her and that a warrant had been issued for her arrest. Doc. 44, Ex. A.

{¶6} On June 19, 2020, after considering Riser's testimony and the written closing arguments of the parties, the trial court denied Risner's motion to withdraw her guilty plea. Doc. 35. In its entry, the trial court noted that

> **the letter was hearsay at best, and the Court is unaware of its actual contents. One would also need to believe that this Defendant was one of the most fortunate persons in the criminal justice system to obtain such a letter from a co-defendant within a day of her sentencing and on the very day she also realized she had been confused when she entered her plea.**

Doc. 35. The trial court also noted that Risner had "admitted to the charge and explained her role in it at the change of plea hearing." Doc. 35.

{¶7} After the trial court denied Risner's motion to withdraw her guilty plea, Wolf resurfaced and appeared in the trial court. Sentencing Hearing Tr. 8. Wolf "confirmed Defendant's [(Risner's)] participation in the crime. *Id*. at 8. On July 21, 2020, Risner appeared at her sentencing hearing. Doc. 47. The trial court ordered Risner to serve thirty months in prison. Doc. 47. The appellant then filed

her notice of appeal on August 5, 2020. Doc. 48. On appeal, Risner raises the following three assignments of error:

**First Assignment of Error**

**The trial court erred by not permitting further hearing and ultimately denying the Appellant's Pre-sentence motion to Withdraw Guilty Plea when there was evidence of the Appellant's innocence.**

**Second Assignment of Error**

**Appellant received ineffective assistance of counsel when trial counsel failed to (1) subpoena Wolf to the hearing on the Motion to Withdraw Plea; (2) failed to admit the letter from Wolf into evidence; and (3) by failing to request a continuance of the hearing so that the location of Appellant's co-defendant may be found.**

**Third Assignment of Error**

**The trial court erred by sentencing the Defendant to thirty-six (36) months when the Appellant was a first time felon, and had shown she was amenable to community control sanctions.**

*First Assignment of Error*

{¶8} Risner argues that the trial court erred in denying her motion to withdraw her guilty plea.

Legal Standard

{¶9} "A motion to withdraw a guilty plea is governed by Crim.R. 32.1 * * *." *State v. Bush*, 3d Dist. Union No. 14-2000-44, 2002-Ohio-6146, ¶ 10. Under Crim.R. 32.1,

> **A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.**

Crim.R. 32.1. While "a presentence motion to withdraw a guilty plea should be freely and liberally granted[,] * * * a defendant does not have an absolute right to withdraw a plea prior to sentencing." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719 (1992).

{¶10} "A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie*, paragraph one of the syllabus.

> **Some of the factors that are weighed in considering the trial court's decision on a presentence motion to withdraw a plea are as follows: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Griffin* (2001), 141 Ohio App.3d 551, 554, 752 N.E.2d 310 [(7th Dist.)].**

*State v. Lane*, 3d Dist. Allen No. 1-10-10, 2010-Ohio-4819, ¶ 21. "None of the factors is determinative on its own and there may be numerous additional aspects 'weighed' in each case." *State v. North*, 3d Dist. Logan No. 8-14-18, 2015-Ohio-720, ¶ 16.

{¶11} "The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial and will not be disturbed on appeal, absent an abuse of discretion." *State v. Peacock*, 3d Dist. Seneca No. 13-13-42, 2014-Ohio-1571, ¶ 26. An abuse of discretion is not merely an error of judgment. *State v. Sullivan*, 2017-Ohio-8937, [102 N.E.3d 86], ¶ 20 (3d Dist.). Rather, an abuse of discretion is present where the trial court's decision was arbitrary, unreasonable, or capricious. *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 23. When the abuse of discretion standard applies, an appellate court is not to substitute its judgment for that of the trial court. *State v. Thompson*, 2017-Ohio-792, 85 N.E.3d 1108, ¶ 11 (3d Dist.).

Legal Analysis

{¶12} Risner argued that her motion to withdraw her guilty plea should have been granted because "her judgment was impaired when she entered her guilty plea [due] to emotions of fear and panic" and because she "discovered new evidence to help prove her innocence." Doc. 35. We will review these arguments and the decision of the trial court under the nine applicable factors set forth above. *Lane, supra*, at ¶ 21.

{¶13} First, as to whether the State would be prejudiced by the withdrawal, the prosecution pointed to the fact that this offense occurred in July of 2019 and argued that the fading memories of "those witnesses that had small, but relevant

roles in this case" would prejudice their case.  Doc. 44.  In particular, the State identified the

> **employees that created/secured security footage for law enforcement, an employee that assisted in confirming alleged fraudulent transactions, and a witness that observed a relevant vehicle and movement a the victim's residence during the time frame of the alleged burglary.**

Doc. 44.  The trial court found that the State, in this argument, "articulated actual prejudice" if the trial court allowed Risner to withdraw her plea.  Doc. 45.

{¶14} Second, as to the quality of her defense counsel, Risner indicated that she was satisfied with her attorney at the change of plea hearing.  Change of Plea Tr. 4.  Further, the record contains no indication that Risner ever reported any problems with defense counsel during the course of this case.

{¶15} Third, as to the extent of the Crim.R. 11 plea colloquy, the trial court discussed the rights that Risner was waiving, the nature of the charges against her, and the penalties that she could potentially receive.  *Id*. at 5-10.  Of particular importance, the trial court also inquired into Risner's competence to enter a plea after she stated she was taking a medication. *Id*. at 4.

{¶16} Fourth, as to the extent of the hearing on the motion to withdraw the guilty plea, the trial court received testimony from Risner about her mental state at the time she pled guilty and about the contents of the letter.  Motion Hearing Tr. 5-14.

{¶17} Fifth, as to whether the motion was given adequate consideration, Risner points to the fact that the motion hearing occurred too quickly for her to secure Wolf as a witness. Appellant's Brief, 7. However, the trial court stated the following in its judgment entry:

> **The Court will concede that the hearing on the Motion occurred quickly, the day after the Motion to Withdraw was filed. The defense's acquiescence to this scheduling is curious at first blush, but understandable in the context of the facts of this case. Had a delay occurred, the alleged author of the letter, Ms. Wolf, may have been unearthed. It was clear at the hearing that Ms. Wolf's whereabouts were unknown by the State. Had a delay occurred, the State may have discovered her whereabouts and obtained further information relative to this letter that may have weighed against the Defendant.**

Doc. 45. The record also indicates that the trial court heard Risner testify and considered the written closing arguments of the parties. Motion Hearing Tr. 5-14. Doc. 43, 44. Further, the trial court issued a decision that detailed the relevant facts and considered this motion under the applicable factors. Doc. 45.

{¶18} Sixth, as to whether the timing of the motion was reasonable, Risner filed her motion to withdraw her guilty plea the day before she was scheduled to be sentenced. Doc. 41. Risner stated that she pled guilty out of fear and panic. But in its judgment entry, the trial court noted "[i]t took almost two * * * months for Defendant to discover that she had plead guilty to something she claims not to have done because of fear and panic." Doc. 45. For this reason, the trial court found that "the timing of Defendant's Motion * * * makes her excuse, that she pled guilty due

-9-

to fear and panic, suspect." Doc. 45. The trial court also noted that Risner had obtained the letter from Wolf just as she "realized she had been confused when she entered her plea." Doc. 45.

{¶19} Seventh, the trial court considered the stated reasons for this motion. On appeal, the first argument that Risner advances is that fear and panic made her unable to understand what she was doing when she pled guilty. However, the following exchange took place at the change of plea hearing:

> **[Trial court]: Since that time [Risner's first appearance at court] have you suffered from or been treated for any mental illness?**
>
> **[Risner]: No.**
>
> **[Trial court]: Are you under the influence of any alcohol, drugs, or medication right now?**
>
> **[Risner]: Medication.**
>
> **[Trial court]: Does it interfere with your ability—**
>
> **[Risner]: No.**
>
> **[Trial court]: —to think clearly? You're good?**
>
> **[Risner]: Yeah.**
>
> **\* \* \***
>
> **[Trial court]: Mr. Buckland [defense counsel], satisfied your client's competent to understand the nature of these proceedings?**
>
> **[Buckland]: Yes, I am, Your Honor.**

Change of Plea Hearing Tr. 3-4. But at the motion hearing, Risner testified that she was "scared and confused" at the time she pled guilty. Motion Hearing Tr. 6. In evaluating this argument, the trial court

> **question[ed] why this fear and panic, which was not evident to the Court at the Change of Plea hearing, was not recognized by the Defendant until the day before her second scheduled sentencing hearing. * * * Defendant would urge the Court to believe that it did not dawn on her before her first scheduled sentencing hearing set for March 26, 2020 that her judgment was clouded on the day of her plea. It took almost two months for Defendant to discover that she had plead guilty to something she claims not to have done because of fear and panic.**

Doc. 45. *See also State v. Schmidt*, 3d Dist. Mercer No. 10-10-04, 2010-Ohio-4809, ¶ 29 (holding that "it is certainly not unusual for a criminal defendant to be under a great deal of stress when entering a plea to criminal charges."). The trial court found that the record did not support Risner's assertions and that she "appear[ed] * * * [to be] experiencing nothing more than a change of heart." Doc. 45.

{¶20} In her second argument, Risner asserts that the letter from Wolf establishes her innocence. Doc. 35. At the motion hearing, Risner testified that she received the letter from Wolf's mother one day before the hearing. Motion Hearing Tr. 6-7. She stated that the letter indicated that she "wasn't there when it [the offense] happened." *Id*. at 7. She also said that Brand had "bribed" Wolf to report that Risner was present for the offense with the promise of "heroin and a place to live." *Id*. at 7, 12. She further testified that she did not know where Wolf was at that time. *Id*. at 9. However, on cross-examination, Risner testified that she had

previously admitted to committing the offense at a police interview and at the change of plea hearing. Motion Hearing Tr. 9, 11. She then stated that she only pled guilty as she thought that "nobody would believe" her. *Id*. at 12. Risner then admitted that she had no personal knowledge of the information contained in the letter. *Id*. at 13-14.

{¶21} Further, the trial court noted that Risner "presented no motivation for the alleged bribe by co-defendant Brand." Doc. 45. The trial court further noted "[t]he letter was supposedly addressed to the Court, but given to the Defendant * * *" and that [t]he timing of the letter [was] also very suspicious." Doc. 45. Given these facts the trial court concluded that Risner,

> **[w]hen concerned that this claim [of being fearful and panicked] may not be enough to have the Court rule in her favor, * * * concocted a tale about a co-defendant's mother delivering a letter to [her] that she claims proves she did not commit the crime, but she neither placed the letter into evidence nor read its contents on the record.**

Doc. 45. The trial court then determined that Risner, in both of these arguments, "failed to advance a reasonable basis for the withdrawal of her plea." Doc. 45.

{¶22} Eighth, Risner understood the nature of the charges and potential sentences. During the Crim.R. 11 colloquy, when asked if she knew what the maximum prison term could be for the charge against her, Risner accurately told the trial court "36 months * * *." Sentencing Hearing Tr. 5. Risner also stated that she understood the trial court's explanation of the potential penalties that she could face

for pleading guilty. *Id*. 5-7. Risner also affirmed that she understood "the nature of the charge" against her "and the possible defenses * * *." *Id*. at 7.

**{¶23}** Ninth, as to whether the defendant was not guilty or had a complete defense to the charges, Risner testified, at the motion hearing, that she had previously admitted to being at the scene of the crime at her change of plea hearing and at a police interview. Motion Hearing Tr. 9-10. Further, even if Brand had bribed Wolf to report that Risner was present at the scene of the crime, this does not necessarily mean that Wolf was lying about Risner's presence at the scene of the crime.[1] *See* Doc. 44. Further, the State also argued to the trial court that Brand had implicated Risner in this offense. Doc. 44. While Wolf's whereabouts were unknown, the State noted that Brand had been sentenced to prison and "would presumably be available for testimony" should this matter proceed to trial. Doc. 44.

**{¶24}** In conclusion, the record indicates that the trial court considered Risner's motion to withdraw her guilty plea under the applicable factors in reaching its decision. Doc. 45. Having reviewed the judgment entry issued by the trial court and the relevant materials in the record, we cannot conclude that the trial court abused its discretion in denying Risner's motion to withdraw her guilty plea. For this reason, her first assignment of error is overruled.

---

[1] After the trial court denied Risner's motion to withdraw her guilty plea, Wolf appeared before the trial court and implicated Risner in the instant offense. Sentencing Hearing Tr. 8.

*Second Assignment of Error*

**{¶25}** Risner next argues that she was denied her constitutional right to the effective assistance of counsel.

Legal Standard

**{¶26}** "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 57, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). For this reason, the appellant has the burden of proving that he or she was denied the right to the effective assistance of counsel. *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 42. "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, ¶ 24, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶27}** In order to establish deficient performance, the appellant must demonstrate that trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Howton, supra*, at ¶ 35, quoting *Strickland* at 687. Generally, "[a] claim of ineffective assistance of counsel is waived by a guilty plea * * *." *State v. Pettaway*, 3d Dist. Seneca No. 13-14-20, 2015-Ohio-226, ¶ 12. However, an ineffective

assistance of counsel claim may still exist if the alleged deficient performance "resulted in * * * [the appellant's] plea not being voluntary or intelligent." *Id.*

**{¶28}** "[I]t is well-established that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Artis*, 2019-Ohio-2070, 137 N.E.3d 587 (3d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992). "[G]enerally an attorney's decision whether to call a witness falls under the rubric of trial strategy, and as such, an appellate court will not second-guess the attorney's decision, even if the decision was debatable." *State v. Young*, 3d Dist. Seneca Nos. 13-08-21, 13-08-22, and 13-08-23, 2008-Ohio-6072, ¶ 13.

**{¶29}** In order to establish prejudice, "the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 36, quoting *State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343, ¶ 13 (3d Dist.). If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test. *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19, citing *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

## Legal Analysis

**{¶30}** On appeal, Risner alleges that the letter from Wolf established that she was not present at her sister's house at the time of the offense. For this reason,

Risner argues that the admission of the letter or Wolf's testimony would have established her innocence. To establish her ineffective assistance of counsel claim, Risner argues that defense counsel failed to call Wolf as a witness; failed to seek admission of the letter into evidence; and failed to request a continuance until Wolf could be located. Even if any of these three actions did constitute deficient performance, Risner cannot establish that she was thereby prejudiced because of three facts.

{¶31} First, Risner had specifically "admitted to committing the offense" before the hearing on her motion. Doc. 45. At the change of plea hearing, the following exchange occurred between the trial court and Risner:

> **[Trial court]: Ms. Risner, what did you do that caused this charge to be brought against you?**
>
> **[Risner]: I entered a house with two other people on . . . allowed to.**
>
> **[Trial court:] You were not allowed to?**
>
> **[Risner]: Yeah.**
>
> **[Trial court]: And the intent was to take things from the house?**
>
> **[Risner]: Yes.**
>
> **[Trial court]: So you know what Count Two accuses you of and you're admitting to that allegation?**
>
> **[Risner]: Yes.**

Change of Plea Hearing Tr. 11-12. Further, at the hearing on the motion, Risner testified that she had previously admitted to having been present for the instant offense at an interview with the police and at her change of plea hearing. Motion Hearing Tr. 9-10. Thus, Risner's own words unequivocally place herself at the scene of the crime during the commission of the offense. *See* Doc. 30.

{¶32} Second, the trial court heard Risner testify about the substance of the letter and considered the written closing arguments of the parties. Motion Hearing Tr. 6-13, 17. While the Defense's offer to provide a copy of the letter to the trial court was declined, the trial court did direct the parties to quote the relevant portions of the letter in their written closing arguments. *Id*. at 17. In its subsequent judgment entry, the trial court found that the

> **failure to provide co-defendant Wolf's alleged letter may have been a tactical move by the defense as the State, who had the opportunity to review the same, stated in its Response to the Motion to Withdraw Plea that, 'the document signed by Jessica Wolf, does not specifically recant the Defendant's involvement in the alleged burglary . . . and does not provide a complete defense to the allegations.'**

(Ellipsis sic). Doc. 45. Nonetheless, the trial court considered her testimony as to the contents of the letter. Doc. 45.

{¶33} Third, while Wolf was unavailable to testify at the time of the hearing on the motion, the record indicates that she resurfaced before Risner was sentenced and implicated Risner in the instant offense. Sentencing Hearing Tr. 8. The trial court said the following about Wolf:

-17-

**Interestingly, after the Defendant stated she received a latter exonerating her from being part of the crime, the alleged author of the letter appeared in court and confirmed Defendant's participation in the crime.**

*Id*. Thus, Wolf's testimony did not provide evidence that tended to establish Risner's innocence.

{¶34} Since Wolf later appeared and implicated Risner in this offense, Risner cannot establish that requesting a continuance until Wolf was located or calling Wolf as a witness would have changed the outcome of this proceeding. Similarly, as to the argument about seeking admission of the letter into evidence, we note that defense counsel offered to provide the trial court with a copy of the letter. Motion Hearing Tr. 16. However, the trial court declined this offer and asked that the parties quote the relevant portions of the letter in their written closing arguments. *Id*. at 17.

{¶35} In this case, the trial court noted that Risner was able to testify about the contents of the letter in a light most favorable to her position. *See* Doc. 45.[2] Further, Risner's own previous admissions contradicted what the letter allegedly reported. Motion Hearing Tr. 10-11. She had already admitted to having been at the scene of the crime during the commission of the instant offense on two prior occasions. *Id*. Given these facts, Risner has not demonstrated how the outcome of

---

[2] In its judgment entry, the trial court suggested that the "failure to provide co-defendant Wolf's alleged missive may have been a tactical move by the defense as the State, who had the opportunity to review the same, stated in its Response to the Motion to Withdraw Plea that, "the document signed by Jessica Wolf, does not specifically recant the Defendant's involvement in the alleged burglary . . . and does not provide a complete defense to the allegations." Doc. 45, quoting Doc. 44.

this proceeding would have been different if the letter had been admitted into evidence.

**{¶36}** In conclusion, Risner has not demonstrated how any of these alleged instances of her defense counsel's deficient performance resulted in any prejudice to her. For this reason, she has not carried the burden of establishing an ineffective assistance of counsel claim in this appeal. Accordingly, her second assignment of error is overruled.

*Third Assignment of Error*

**{¶37}** Risner argues that the trial court erred in sentencing her to a prison term when the parties jointly recommended that she only receive a community control sanction.

Legal Standard

**{¶38}** In rendering a sentence, "[t]he trial court has full discretion to impose any sentence within the authorized statutory range * * *." *State v. Dayton*, 3d Dist. Union No. 14-16-05, 2016-Ohio-7178, ¶ 15, quoting *State v. King*, 2d Dist. Clark Nos. 2012-CA-25, 2012-CA-26, 2013-Ohio-2021, ¶ 45. However, in this process, trial courts are to sentence convicted felons in accordance with the overriding purposes of felony sentencing, which

> **are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. * * ***

R.C. 2929.11. "To effectuate compliance with these overriding purposes, the Ohio Revised Code requires the trial court to consider a number of factors listed in R.C. 2929.12." *State v. Walton*, 3d Dist. Logan No. 8-17-55, 2018-Ohio-1680, ¶ 6. The R.C. 2929.12 factors direct the trial court to evaluate the seriousness of the offense and the likelihood of recidivism. R.C. 2929.12.

{¶39} "Appellate courts defer to the broad discretion of the trial court in matters of sentencing."[3] *State v. Jones*, 3d Dist. Shelby No. 17-19-08, 2019-Ohio-4938, ¶ 7. If the defendant establishes by clear and convincing evidence that his or her sentence is "(1) contrary to law and/or (2) unsupported by the record," an appellate court has the authority, pursuant to R.C. 2953.08(G)(2), "to increase, reduce, or otherwise modify a sentence * * *." *State v. McGowan*, 147 Ohio St.3d 166, 2016-Ohio-2971, 62 N.E.3d 178, ¶ 1.

{¶40} "Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence 'only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.'" *State v. Nienberg*, 3d Dist. Putnam Nos. 12-16-15, 12-16-16, 2017-Ohio-2920, ¶ 8, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

---

[3] Trial courts are given discretion in applying the statutory factors in the process of determining an appropriate sentence. A misapplication of these factors in sentencing that rises to the level of an abuse of discretion is clearly and convincingly contrary to law. Thus, we examine the record to determine whether the trial court clearly and convincingly failed to act in accordance with the laws governing the imposition of sentences.

**Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.**

*State v. Taflinger*, 3d Dist. Logan No. 8-17-20, 2018-Ohio-456, ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus (1954).

Legal Analysis

{¶41} In this case, Risner was sentenced to thirty months in prison. Doc. 47. This sentence falls within the statutory range of nine to thirty-six months. *See* R.C. 2929.14(A)(3)(b). At the sentencing hearing, defense counsel requested that the trial court only impose a community control sanction on Risner. Sentencing Hearing Tr. 5. However, at the sentencing hearing, the trial court found that Risner "is not amenable to community control and [that] prison is consistent with the purposes and principles of sentencing." *Id.* at 7. *See* Doc. 47. Thus, in this process, the trial court considered the overriding purposes of felony sentencing in R.C. 2929.11. *See* R.C. 2929.11. Further, at the sentencing hearing, the trial court considered the seriousness and recidivism factors. Sentencing Hearing Tr. 7.

{¶42} As to the seriousness factors, the trial court found that Risner's "relationship with the victim facilitated the offense" because the victim was Risner's sister. Sentencing Hearing Tr. 8. *See* R.C. 2929.12(B)(2). The trial court noted

that Risner, in committing this offense, "brought others with her into her sister's home and they stole money and a bank card leaving the victim with no funds." Sentencing Hearing Tr. 8. *See* R.C. 2929.12(B)(6). After considering the contents of a victim impact statement at the hearing, trial court stated that "the victim feels very betrayed and very violated." Sentencing Hearing Tr. 8. *See* R.C. 2929.12(B)(2). The trial court also found that this offense "violated the sanctity of another's home * * *" and was "made even more egregious" by the fact that the victim of the offense "was [Risner's] very own sister." Sentencing Hearing Tr. 7.

{¶43} As to the recidivism factors, the trial court found that the instant offense was committed while Risner "was * * * on probation" for another offense. Sentencing Hearing Tr. 8. *See* R.C. 2929.12(D)(1). The trial court also examined Risner's criminal history. The trial court noted that Risner had "convictions for passing bad checks and some misdemeanor thefts * * *" and that Risner had bond violations in the instant case. Sentencing Hearing Tr. 8-9. *See* R.C. 2929.12(D)(2). The trial court then found that Risner "shows no remorse" for committing this offense. Sentencing Hearing Tr. 8. *See* R.C. 2929.12(D)(5).

{¶44} In conclusion, Risner has not carried the burden of establishing that her sentence is clearly and convincingly contrary to law nor has she shown by clear and convincing evidence that her sentence is unsupported by the record. Having reviewed the evidence in the record, we cannot conclude that the trial court erred by imposing its sentence. As such, Risner's third assignment of error is overruled.

*Conclusion*

**{¶45}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Wyandot County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**